OPINION OF THE COURT
Hancock, Jr., J.
Defendants were arrested and charged with criminal *316 possession of a weapon when police officers discovered a loaded gun in a concededly unlawful search of the cab of a truck tractor following a traffic stop. Later, after it was discovered that the tractor was stolen, defendants were also charged with criminal possession of stolen property. In defendants’ appeals from convictions on both charges, they argue that it was error to deny their motions to suppress the gun. The suppression court and the Appellate Division agreed that the search and seizure were in violation of defendants’ constitutional rights. Nevertheless, both courts, applying the inevitable discovery rule, held that the evidence should not be excluded, reasoning that the gun would inevitably have been discovered during the inventory search following defendants’ arrest when, as would shortly have been revealed in a routine registration check, the police learned that the truck was stolen. The sole issue is whether the inevitable discovery exception to the exclusionary rule was properly invoked in these circumstances. Because we conclude that it was not, the order of the Appellate Division should be modified.* The convictions for criminal possession of a weapon in the third degree should be reversed, the motions to suppress granted, and the weapon possession count in the indictment should be dismissed. The convictions for criminal possession of stolen property in the first degree should, however, be affirmed.
I
State Troopers Clifford and Figueroa, patrolling New York State Route 17 near Liberty, stopped defendants’ truck tractor *317 for speeding. Clifford asked the driver, defendant Newton, for a driver’s license and registration. Newton produced a Connecticut driver’s license, but was unable to locate a registration for the truck in the piles of papers strewn about the cab. Dissatisfied with Newton’s attempts to find the registration, Clifford ordered Newton out of the truck and climbed in the driver’s side to conduct his own search. Clifford saw a brown vinyl bag on the console between the seats. A logbook portfolio stuck out from an unzippered side pocket of the bag. On removing the portfolio, Clifford noticed the butt of a revolver inside the pocket. The troopers arrested both defendants for criminal possession of a weapon, handcuffed them, put them in the back of the police car, and took them to the Ferndale State Police barracks. On the trip to Ferndale, a radio check showed Newton’s license to have expired and the truck to be stolen. Defendants were then charged with criminal possession of stolen property.
II
The exclusionary rule generally bars "from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion” (Wong Sun v United States, 371 US 471, 485; see, People v Bethea, 67 NY2d 364; People v Johnson, 66 NY2d 398; People v Bigelow, 66 NY2d 417; People v Gokey, 60 NY2d 309; People v Elwell, 50 NY2d 231; cf., People v Arnau, 58 NY2d 27). A prime purpose of the rule is to deter police misconduct (see, Nix v Williams, 467 US 431, 442-443; People v Bigelow, 66 NY2d 417, 427, supra). It has been recognized, however, "that in some circumstances strict adherence to the Fourth Amendment exclusionary rule imposes greater cost on the legitimate demands of law enforcement than can be justified by the rule’s deterrent purposes” (Brown v Illinois, 422 US 590, 608-609 [Powell, J., concurring in part]). Thus, courts have held that evidence should not be suppressed if knowledge of it "is gained from an independent source” (Silverthorne Lbr. Co. v United States, 251 US 385, 392; People v Arnau, 58 NY2d 27, supra). Similarly, "the detrimental consequences of illegal police action [may] become so attenuated” that the taint of the initial misconduct is dissipated (Brown v Illinois, supra, at 609 [Powell, J., concurring in part]). Sufficient attenuation to avoid application of the exclusionary rule has been found when the linkage between the police misconduct and that evidence is interrupted by inter *318 vening events (see, e.g., Wong Sun v United States, supra, at 491; People v Graham, 90 AD2d 198, 200-203, cert denied 464 US 896) or becomes overly extended and weakened by passage of time (see, e.g., People v Minley, 112 AD2d 712, affd 68 NY2d 952; People v Miller, 105 AD2d 1127, 1128; see generally, 3 LaFave, Search and Seizure § 11.4, at 614-621). The question is " 'whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint’ ” (Wong Sun v United States, supra, at 488, quoting Maguire, Evidence of Guilt, at 221 [1959]).
Applying this same rationale courts have refused to suppress evidence if it can be shown by "a very high degree of probability” (People v Payton, 45 NY2d 300, 313, revd 445 US 573, on remand 51 NY2d 169) that the evidence sought to be suppressed would inevitably have been discovered irrespective of the initial wrong. Like the independent source and attenuated connection exceptions to the exclusionary rule, the inevitable discovery exception is based on the perception that in certain circumstances the interest of society is better served by having relevant and material evidence admitted in criminal cases than by deterring police misconduct through the exclusion of evidence unlawfully acquired (see, Nix v Williams, 467 US 431, 442-443, supra).
Although the inevitable discovery rule has for several years been established law in this State (see, People v Payton, supra; People v Fitzpatrick, 32 NY2d 499; cf., People v Knapp, 52 NY2d 689), our court has never applied the rule where, as here, the evidence sought to be suppressed is the very evidence obtained in the illegal search. In People v Fitzpatrick (supra) and People v Payton (supra), as in Nix v Williams (supra), the evidence saved from suppression by the inevitable discovery rule was not evidence illegally obtained during or as the immediate consequence of the challenged police conduct. It was evidence obtained indirectly as a result of leads or information gained from that primary evidence. In Fitzpatrick, for example, the evidence the court declined to exclude was a gun found in a closet as a result of information obtained in an illegally acquired statement. In Payton we applied the rule to information linking the defendant to the murder weapon which was discovered by tracing a sales slip found in the initial illegal search. Similarly, in Nix v Williams the Supreme Court, in adopting the inevitable discovery rule, held *319 that evidence obtained through defendant’s illegally elicited statements (the location of the body of the victim) should not have been suppressed because it would inevitably have been discovered in a search which was already in progress.
When the inevitable discovery rule is applied to secondary evidence, as in Payton, Fitzpatrick and Nix, the effect is not to excuse the unlawful police actions by admitting what was obtained as a direct result of the initial misconduct. It is not . the tainted evidence that is admitted, but only what was found as a result of information or leads gleaned from that evidence. The rationale is that when the secondary evidence would have been found independently in any event, "the prosecution [should not be] put in a worse position simply because of some earlier police error or misconduct” (Nix v Williams, supra, at 443; emphasis in original). In contrast, when the inevitable discovery rule is applied to primary evidence, as was done here, the result is quite different. It is the tainted evidence itself and not the product of that evidence which is saved from exclusion. Permitting its admission in evidence effects what amounts to an after-the-fact purging of the initial wrongful conduct, and it can never be claimed that a lapse of time or the occurrence of intervening events has attenuated the connection between the evidence ultimately acquired and the initial misconduct. The illegal conduct and the seizure of the evidence are one and the same.
In the case before us, the suppression court and the Appellate Division, in holding that the illegally seized weapon should not be suppressed, hypothesized that the gun would inevitably have been discovered through a source that was independent of the initial taint. Viewing the situation at the moment of the illegal seizure, the courts below simply assumed the chain of events which would customarily have been set in motion following defendant Newton’s failure to produce a registration certificate: that a radio check would have revealed that the truck was stolen, defendants would have been arrested, the truck would have been impounded and the gun would have been found in an inventory search.
We hold that applying the inevitable discovery rule in these circumstances, and effecting what would amount to a post hoc rationalization of the initial wrong (see, Nix v Williams, supra, at 448), would be an unacceptable dilution of the exclusionary rule. It would defeat a primary purpose of that rule, deterrence of police misconduct (see, People v Bigelow, 66 NY2d *320 417, 427, supra). As noted by the Oregon Court of Appeals in State v Crossen (21 Ore App 835, 838, 536 P2d 1263, 1264), in declining to apply the inevitable discovery rule to primary as distinguished from secondary evidence, failing to exclude wrongfully obtained primary evidence "would encourage unlawful searches in the hope that probable cause would be developed after the fact” (see, United States v Massey, 437 F Supp 843, 852-854; Stokes v State, 289 Md 155, 423 A2d 552; State v Williams, 285 NW2d 248, 256-257 [Iowa]; contra, Clough v State, 92 Nev 603, 555 P2d 840; for a discussion of the distinction between primary and secondary evidence, see, 3 LaFave, Search and Seizure § 11.4, at 620-628).
The People’s argument that defendants lacked standing to contest the lawfulness of the seizure was raised for the first time at the Appellate Division and thus is not preserved for our review. We have examined defendant Newton’s other argument and found it to be without merit.
Accordingly, the order of the Appellate Division should be modified by granting defendants’ motions to suppress the gun, vacating the convictions and sentences for criminal possession of a weapon in the third degree and dismissing that count of the indictment and, as so modified, affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Titone and Bellacosa concur; Judge Alexander taking no part.
Order modified in accordance with the opinion herein and, as so modified, affirmed.

The conclusions that the evidence should have been suppressed under the application of the exclusionary rule and that the inevitable discovery exception does not apply rest on our analysis of applicable Federal decisions (see, Nix v Williams, 467 US 431; Brown v Illinois, 422 US 590; Wong Sun v United States, 371 US 471; Silverthorne Lbr. Co. v United States, 251 US 385). We reach the same conclusions by applying the exclusionary rule established under our State law (see, People v Bethea, 67 NY2d 364; People v Johnson, 66 NY2d 398; People v Bigelow, 66 NY2d 417; People v Gokey, 60 NY2d 309; People v Elwell, 50 NY2d 231; cf., People v Arnau, 58 NY2d 27), our New York cases enunciating the inevitable discovery doctrine (see, People v Payton, 45 NY2d 300; People v Fitzpatrick, 32 NY2d 499; cf., People v Knapp, 52 NY2d 689), and non-Federal decisions and other authorities which we find persuasive (see, State v Crossen, 21 Ore App 835, 536 P2d 1263; see also, 3 LaFave, Search and Seizure § 11.4, at 620-628). Our decision to reverse, therefore, while based on our analysis of Federal law rests equally on an "adequate and independent” State ground (Michigan v Long, 463 US 1032, 1041-1042): that defendants’ rights under our State Constitution (NY Const, art I, § 12) were violated.