■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT I. HERMAN, Appellant.—Appeal by the defendant from a judgment of the County Court, Westchester County (Cowhey, J.), rendered December 22, 1987, convicting him of grand larceny in the second degree and falsifying business records in the first degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's motion which was to suppress bank records.

Ordered that the judgment is affirmed, and the case is remitted to the County Court, Westchester County, for further proceedings pursuant to CPL 460.50 (5).

Between April 16 and April 21, 1986, the president of the company in which the defendant was employed discovered certain alterations in the company's business records leading him to suspect that the defendant was involved in substantial theft from the company. On April 21, 1986, he called the Mount Vernon Police Department and asked them to arrange for two nonuniformed officers to be present when the defendant was discharged since defendant had a gun permit and kept two weapons on the premises. After the defendant was discharged from employment, the police officers, the president of the company, and the defendant, walked to the back of the building where the defendant's office was located to retrieve a weapon kept in a room nearby. The defendant owned his own desk and only he had the key to open it.

One officer entered the defendant's office while the other stood outside the door. The defendant went behind his desk, opened it, and retrieved a manila folder. When the president of the company said he wanted to see the contents of the envelope, the defendant protested that they were personal. The officer intervened, stating that, "you can't leave without *[sic]* that because it's on the man's property". The defendant

thereupon handed the folder to the officer who thumbed through its contents, eventually coming upon a sealed envelope which he tore open. After observing that the envelope contained bank statements addressed to the defendant from the National Westminster Bank, the officer concluded that the items were personal and returned them to the defendant. The president of the company was standing next to the officer and also saw the contents of the envelope.

At the time, the officers, who were lawfully on the premises to retrieve the pistol permits and the guns, were unaware of the reasons for the defendant's discharge from employment since no complaint had been lodged with any law enforcement agency, nor were the officers subsequently involved in any other police activity in connection with the investigation of the defendant. A complaint was evidently filed with the District Attorney's office on the following day, April 22, 1986, and an investigator from that office was assigned to the case on May 1, 1986.

Within a week of the defendant's discharge, another employee told the president of the company that her husband had seen the defendant in the National Westminster Bank's Pelham branch in February, that the defendant appeared very nervous, and that while the defendant was in the bank, money spilled out of an envelope which the defendant dropped. She also stated that when she mentioned to the defendant her husband's encounter with him, he asked her not to tell anyone where he banked. At the time the employee conveyed this information to the president, she was unaware that a complaint had been filed with the District Attorney's office. Upon obtaining this information, the president recalled previously seeing the National Westminster Bank statements when the officers had inspected the defendant's envelope on April 21. Shortly thereafter, he conveyed the foregoing information to an investigator from the District Attorney's office who obtained a subpoena seeking any and all records of account maintained in the defendant's name at the Pelham branch of the National Westminster Bank. Based on the documents obtained, the defendant was subsequently charged with grand larceny in the second degree and falsifying business records in the first degree.

The hearing court denied the defendant's motion to suppress, reasoning, *inter alia,* that the officer's inspection of the envelope did not constitute a search and that, in any event, the "inevitable discovery" rule was applicable under the circumstances, precluding suppression of the bank statements.

We affirm, although for reasons which differ from those relied on by the Supreme Court.

Preliminarily, we note—and the People do not argue otherwise—that the court erred in determining that the "inevitable discovery" rule was applicable within the factual context presented. It has been held that, "[t]he doctrine of inevitable discovery may not be used to excuse unlawful police actions by admitting what was obtained as a direct result of the misconduct" *(People v Burr,* 70 NY2d 354, 360, n 3; *People v Stith,* 69 NY2d 313, 319; *People v Okun,* 135 AD2d 1064, 1066). Moreover, its application is limited to evidence which is secondary in nature, that is, evidence obtained indirectly as a result of leads or information gained from primary evidence *(see, People v Stith, supra).* The information regarding the defendant's bank accounts—ultimately acquired by subpoena —does not constitute "secondary evidence" since that information was directly obtained by the officer after he inspected the contents of the defendant's envelope on April 21, 1986. Moreover, the mere fact the investigator from the District Attorney's office testified he would have ultimately subpoenaed records from banks near the defendant's place of employment constitutes a *"post hoc* rationalization" in the absence of any evidence that such investigative activity was actually underway *(cf., People v Stith,* 69 NY2d 313, 319, *supra).* Accordingly, the court's determination may not be sustained through reliance upon the inevitable discovery rule.

Nor do we agree with the Supreme Court's conclusion that the officer's inspection of the defendant's envelope was anything less than a search to which the strictures of the Fourth Amendment apply. As the Court of Appeals has observed, "[o]nce it is resolved that the particular locale is one in which there is a cognizable expectation of privacy, the invasion of that privacy interest—including a visual one—will be a search subject to constitutional strictures" *(People v Mercado,* 68 NY2d 874, 875). Since, under the circumstances, the defendant maintained a legitimate expectation of privacy in his workplace and private papers *(cf., O'Connor v Ortega,* 480 US 709, 715), the officer's visual inspection of the envelope in the absence of consent or reasonable cause to do so, constituted an impermissible search *(see, People v Mercado, supra,* at 876).

Although the officer's visual inspection of the manila envelope may have been improper, we nevertheless conclude that the defendant's motion to suppress was properly denied, inasmuch as the information obtained by the police regarding the defendant's banking records was secured through an indepen-

dent source, untainted by the initial illegality of the police search. It has been held that when the police act illegally, evidence may nonetheless be admissible if gained through an independent source without taint or exploitation of the illegality by the police (see, People v Burr, 70 NY2d 354, 361, supra; Segura v United States, 468 US 796, 805). The so-called "independent source" rule applies to evidence initially discovered as a consequence of an unlawful search but later obtained independently from activities untainted by the initial illegality (Murray v United States, 487 US —, —, 108 S Ct 2529, 2534). At bar, the same knowledge acquired when the police officer opened the envelope was independently acquired, in a more detailed nature, when the company employee later conveyed the information regarding the sighting of the defendant at the bank's local branch. In light of the foregoing, the seizure of the bank records was founded upon an independent source, and, accordingly, the hearing court properly refused to suppress those records. Kunzeman, J. P., Weinstein, Rubin and Kooper, JJ., concur.