OPINION OF THE COURT
Carol Berkman, J.
In each of these cases the People have moved for a protec *866 tive order exempting the search warrant application from discovery. They argue that disclosure would tend to reveal the identity of the confidential informants.
The appellate courts of this State have not spoken on this precise issue, and this court has reached a different conclusion, and fashioned a different procedure, than the few other Trial Judges who have written on this question.
In my view, the search warrant application cannot be totally exempted from discovery, although reasonable protective measures can be taken. Once the defense has moved in writing for discovery of the search warrant application, the People must make a written cross motion for a protective order, setting forth in writing and in detail, ex parte to the extent necessary, the reasons why discovery would compromise the informant’s confidentiality. The People must specifically propose and set forth either redactions or a paraphrase which will both protect the informant’s identity and afford the defense a full opportunity to participate in litigating the constitutional search and seizure issues. In the Lind case, the People’s suggestions for redaction are slightly too broad. In the Velez matter, the People have not made any proposal for redaction or paraphrase. The People’s applications are denied with leave to make further application in accord with this opinion by June 1, 1990.
THE FACTS
Defendants Velez, Maisonave and Arroyo are jointly charged with criminal possession of a controlled substance in the third and fourth degrees. The contraband was seized upon the execution of search warrant No. 77/90.
Defendants Freddie Lind and Georgina Lind, mother and son, are jointly charged with criminal possession of a controlled substance in the first degree and related crimes. The contraband was seized upon the execution of search warrant No. 607/89.
The probable cause for the issuance of the warrants was supplied by confidential informants. In the Velez case no informant was brought before the issuing Magistrate. In the Lind case, however, an informant was questioned under oath by the Magistrate prior to the issuance of the warrant.
All of the defendants have sought discovery of the search warrant applications. The People have not argued that search warrant applications are not normally discoverable under CPL *867 240.20 (1) (h). (See, People v Brown, 104 Misc 2d 157, 163 ["Clearly, the existence of a search warrant and the supporting affidavits for same is a fact of constitutional dimension”].) Rather, they have moved pursuant to CPL 240.50 for a protective order absolutely denying discovery on the grounds that turning over the applications might compromise the confidentiality of the informants. In the alternative, the prosecutor in the Lind case seeks redaction of the dates and times of. the observations by the informantes) and of certain information not relating to the subject apartment.
The People’s original applications were too conclusory to enable the court to exercise its informed discretion. Pursuant to my directions, the prosecutors have submitted written affidavits, under seal and ex parte. These affidavits establish prima facie that disclosing all of the facts set forth in the search warrant applications might reveal the identities of the informants.
CONCLUSIONS OF LAW
Roviaro v United States (353 US 53, 59-60) summarizes the law of the so-called informant’s privilege:
"What is usually referred to as the informer’s privilege is in reality the Government’s privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. * * * The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.
"The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. * * *
"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer’s identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action” (emphasis supplied).
Notwithstanding the references in Roviaro (supra) to the *868 contents of the informant’s communications, the volumes of case law on the subject, in this and other jurisdictions, most often deal with the identity of the informant and when that must be made known. The cases generally assume that the contents of the communications have been revealed.
There are few decisions which deal directly with this latter issue: may the defense be precluded by the informant’s privilege from examining and challenging the communications of informants which purportedly provided the probable cause to seize the incriminating evidence? (See, People v Mont, NY County, McLaughlin, J., affd 135 AD2d 1151; People v Watkins, Sup Ct, NY County, McLaughlin, J.; People v Seychel, 136 Misc 2d 310 [Sup Ct, NY County, Snyder, J.].)
Although Mont (supra) was appealed, the only issue raised was the sentence. A CPLR article 78 proceeding was brought but dismissed. (Matter of Schmukler v McLaughlin, 123 AD2d 526, lv denied 69 NY2d 660.) The cases on which Judges Snyder and McLaughlin relied for their finding of an inherent power to seal search warrant applications do not deal with a defendant’s rights to discovery after indictment. Reasonably extensive research has revealed only one other case in any jurisdiction on this issue. (State v Mathiesen, 27 Wash App 257, 616 P2d 1255, cert denied 451 US 914.)
In Mathiesen (supra) the Court of Appeals of Washington easily concluded that the defense is entitled to examine the search warrant application, except that the court may hold an in camera, ex parte hearing to redact it. As the Washington Court of Appeals stated, "We are unable to perceive how a defendant can challenge whether or not a search warrant was issued on 'probable cause, supported by oath or affirmation’ as required by the Fourth Amendment if he is denied the opportunity to examine the affidavit” (supra, 27 Wash App, at 260, 616 P2d, at 1257).
In Mont (supra), Judge McLaughlin concluded that probable cause was totally made out and that the defense could raise no colorable claim that it was lacking even were it given the application. Since he saw no internal inconsistency such as to indicate that the affiant was being untruthful, he opined that the defense probably could not raise a question of material falsity under Franks v Delaware (438 US 154) and People v Alfinito (16 NY2d 181). Although the opinion does not discuss the fact at any length, it also appears that the informant may have been available to the issuing Magistrate, thus reducing *869 the possibility of affiant untruthfulness. Finally, Judge McLaughlin said he was unable to redact the affidavit effectively and meaningfully so as to preserve the confidentiality of the informant but still convey the essence of the communications.
Recognizing that without the application the defense could not raise an Alfinito/Franks challenge, Judge McLaughlin proposed an in camera inquiry of the affiant, and if necessary the informant, as to which the defense was invited to submit a list of proposed questions. In Watkins (supra), Judge McLaughlin made clear that the information revealed at the in camera hearing would then be summarized for the defense. If the hearing revealed material perjury or a reckless disregard of the truth, then the defense would be given a copy of the application, and an adversarial hearing held.
In Watkins (supra), Judge McLaughlin discussed at greater length why redaction may in some instances not be feasible, as when the application is drafted so that the revealing and nonrevealing facts seem inextricably interwoven. He also limited the availability of the protective order to those cases in which the People show specifically "that there exists a reasonable possibility that disclosure of the informant’s identity either would place the informant, his family or his friends at physical risk or that such disclosure would jeopardize a continuing investigation.” He suggested that when the People could not establish an actual risk, they might choose to redact a portion of the application, and have the court rely only on that which is disclosed to the defense in making its probable cause review.
In Seychel (supra), Judge Snyder adopted a four-step procedure. First, she reviewed the search warrant in camera and concluded that it set forth probable cause and was not facially perjurious. Had it appeared to be so, she would have ordered the warrant application turned over and held an Alfinito/ Franks hearing. Second, she ordered an in camera, ex parte examination of the informant to determine whether breaching the privilege might endanger either the informant’s life or his future usefulness in investigations. Third, she examined the application to determine whether it could be effectively redacted and determined that this was not possible. The fourth step was an ex parte, in camera hearing like that proposed in Mont and Watkins (supra) and after the pattern set forth in People v Darden (34 NY2d 177).
Darden (supra) involved a search without a warrant based *870 on information from an assertedly reliable informant. In that situation, if the defense raises the issue at the suppression hearing, the informant must be made available for in camera questioning by the Judge, with opportunity to the defense to submit questions in writing. At that hearing, the Court of Appeals directed, "[t]he Judge should take testimony, with recognition of the special need for protection of the interests of the absent defendant, and make a summary report as to the existence of the informer and with respect to the communications made by the informer to the police to which the police testify. That report should be made available to the defendant and to the People” (supra, 34 NY2d, at 181 [emphasis supplied]).
In Darden (supra), the Court of Appeals contemplated both that the police would testify at the suppression hearing about the informant’s communications and that at least a "report”, albeit not a full transcript, of the informant’s testimony at the ex parte hearing would be made available to the defense. Nothing in Darden suggests that a trial court can decide to shield the informant’s communications completely for any reason short of the People’s consent to suppression.
A court simply does not function the same ex parte as it does in the adversarial forum. Thus, it has been held, the Judge who issues a warrant ex parte may later rule on the adversarial motion to controvert. (E.g., People v Smith, 41 AD2d 893, 894.) Similarly, the ex parte ruling does not become law of the case so as to prohibit another Judge from hearing the adversary motion to controvert. (People v Guerra, 65 NY2d 60, 63.)
In short, no matter how "clear” an issue may seem, counsel may be able to make persuasive arguments to the contrary. As the Court of Appeals recently reminded us in a somewhat different context, "Therefore, the unique, indispensable presence of at least the 'single-minded counsel for the accused’ (People v Rosario, 9 NY2d 286, 290) is minimally necessary to safeguard that fundamental fairness to defendant” (People v Darby, 75 NY2d 449, 454).
There is no escaping from the clear statement of People v McCall (17 NY2d 152, 159): "A refusal to permit a defendant to examine the facts upon which his privacy has been broken into amounts to saying that any search warrant * * * is all right if a Judge has seen fit to sign it.” This is particularly true with respect to an Alfinito/Franks issue, as to which the *871 defense must make specific, factual allegations to merit a hearing on possible affiant perjury. Obvious inconsistencies apparent on the face of the affidavit rarely, if ever, occur. Defense counsel must know the alleged facts so that they may be discussed with, and perhaps contradicted by, the client or other defense witnesses.
Accordingly, the defense is entitled to at least a "report”, a la Darden (supra), of what the informant said to provide the basis for the search warrant. That report, whether through redaction or selective paraphrase, must be sufficiently detailed to permit of full defense participation in arguing that the search warrant application . was facially deficient, whether because the grounds were inadequate to amount to probable cause or the information stale or some other reason, and to permit the defense to determine whether it can make a showing which would entitle it to an Alfinito/Franks hearing. If such a report is supplied, there is no reason to bring the informant to the courthouse for a hearing, with all the dangers that this procedure might itself entail, unless the defendant does make the requisite showing.
PROCEDURE WHERE PEOPLE SEEK A PROTECTIVE ORDER
Where the People seek a protective order with respect to a search warrant application, they should set forth in detail the grounds for believing that the application cannot be disclosed without endangering the informant’s privilege. If this cannot be done on notice without revealing the informant’s identity, an ex parte written submission may be made. Oral in camera and ex parte hearings on this subject might lead to discussions which could further compromise the court’s ability to act as an impartial arbiter. (See, e.g., United States v Ordonez, 737 F2d 793, 809 [9th Cir].) Accordingly, I will accept only written applications.
Moreover, I do not require a specific showing that disclosure would create a risk of danger either to the informant or to future investigations. The informant privilege is presumptive and so well established in law that it requires no elaboration on a case-by-case basis. On the other hand, no matter how great the risk, if. fundamental fairness dictates disclosure, the courts must order it. As the Supreme Court of the United States pointed out in Roviaro (supra), the People’s only alternative at that point, unpleasant though it might be, would be dismissal of the charges.
The People’s written submission should also set forth, again *872 in detail, the manner in which the People suggest the application can be redacted or paraphrased so as to preserve the defendant’s right to participate in the litigation of the Fourth Amendment issues. The court should not be expected both to redact and/or paraphrase the application and then to pass upon the adequacy of the result. The People should explain in writing the reason for the deletion of each fact omitted.
Particularly where the informant was not before the issuing Magistrate (a procedure which itself very much reduces if not eliminates the possibility of police perjury in the application), the People must be careful to include as many details as possible, so as to provide the defense with the fullest possible opportunity to challenge the credibility of the affiant pursuant to Alfinito and Franks (supra).
It may also be, especially where ultimate disclosure appears inevitable under People v Goggins (34 NY2d 163, cert denied 419 US 1012) that the People may choose only to request a delay in the disclosure.
In order that the People’s applications be preserved and supplied for the appellate record, the People’s sealed submissions shall be marked as a People’s exhibit and returned to the prosecutor for safekeeping, rather than being placed in the public court file.
DECISION
Accordingly, in the Lind matter, the People’s alternate prayer for relief could be granted except that the dates of the informant observations may not be entirely redacted. In order that the defense may participate in the litigation of any staleness issue, and to permit an Alfinito/Franks evaluation by the defense, the People should provide a reasonable range of dates, approximating the actual dates of the observations. The application, redacted in accordance with this opinion and order, shall be turned over to each defense counsel by June 1, 1990 unless the People submit a further prayer for relief by that date.
With regard to Velez/Maisonave/Arroyo, the People have not suggested either redactions or a paraphrase, or a possible delay of disclosure. Accordingly, in that matter the motion for a protective order is denied, with leave to the People to make the appropriate showing by June 1, 1990. In the absence of an additional motion by the People, the search warrant application shall be turned over to each defense counsel by that date.