THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NORMAN S. STRICKLAND, Appellant.

Third Department, June 6, 1991

APPEARANCES OF COUNSEL

*O'Connor, Gacioch & Pope (Kelly E. Fischer* of counsel), for appellant.

*Gerald F. Mollen, District Attorney (Marjorie M. Lyons* of counsel), for respondent.

## OPINION OF THE COURT

MAHONEY, P. J.

Defendant appeals his conviction for attempted criminal possession of a weapon in the third degree, arguing that County Court improperly denied his motion to suppress certain statements and physical evidence. The transcript of defendant's suppression hearing reveals that, at approximately 7:00 P.M. on March 12, 1987, members of the Sheriff's Department responded to a radio report that a man, later identified as defendant, was wielding a firearm and making threats along U.S. Route 11 in the Town of Barker, Broome County, near the residence of Kenneth Fischer. Sheriff's Department officers arrived at the scene and Deputy Walter Wegrzynski spoke with Fischer, who reported that defendant had approached him, pulled out a sawed-off shotgun from under his jacket, unloaded then reloaded the shotgun and started walking north on Route 11. Fischer was subsequently taken to Highway Patrol Headquarters to give a statement. Approximately one hour later, a record of defendant's criminal history was obtained and, at approximately 9:30 P.M., Wegrzynski telephoned defendant's residence, located defendant and informed him that police officers would be there to question him. A felony complaint was then prepared and Wegrzynski obtained an arrest warrant from Town Court.

At approximately 10:00 P.M., several police officers arrived at defendant's residence to execute the warrant. Defendant, standing outside with a can of beer in one hand and his other hand by his side, was identified by the officers who then placed him under arrest and transported him to Town Court. The police informed defendant at that time that he was under arrest for criminal possession of a weapon, to which defendant responded, "I don't have a weapon." Detective Albert Bomysoad then spoke with defendant's father, who told the officer that defendant had left the house with a shotgun that evening, right after Wegrzynski's telephone call. Defendant's father also told Bomysoad "that [he] could search anyplace that [he] wanted", after which a hunt for the shotgun began. After a brief search, Sergeant Philip Thompson radioed the patrol car in which defendant was being transported to solicit the shotgun's location from defendant. When asked by Wegrzynski where the shotgun was located, defendant replied that "he didn't know anything about it". Sheriff's Deputy Linda Ann Dedek then asked defendant again where the shotgun was located, informing defendant that the officers "are looking for it now [and] we'll be searching all night long until we find it, so just tell us where it is". Defendant acquiesced and replied "[y]es, it is in the mailbox, be careful, it is loaded". It is undisputed that *Miranda* warnings were not administered to defendant until his arraignment. Defendant's mailbox was located on the other side of Route 11 from defendant's residence and a search thereof resulted in the discovery and seizure of the shotgun. Defendant thereafter admitted to possession of the weapon, stating that he was repairing it for someone and had placed it in the mailbox to be picked up that evening.

Defendant was subsequently charged with two counts of third degree criminal possession of a weapon. Defendant then sought to suppress the introduction into evidence of his statements to the police as well as the sawed-off shotgun. County Court denied the motion after a hearing. Defendant subsequently pleaded guilty to the reduced charge of attempted third degree criminal possession of a weapon for which he was sentenced as a second felony offender to 1½ to 3 years' imprisonment. This appeal followed.

Defendant contends that County Court erroneously applied a "public safety" exception to the *Miranda* warnings requirement in denying defendant's motion to suppress both his statement in the patrol car and the shotgun itself. The "public

safety" exception was first recognized by the United States Supreme Court in *New York v Quarles* (467 US 649), wherein the court concluded that *Miranda* warnings were not required prior to questioning a defendant when the circumstances present a danger to the public safety *(see, supra,* at 656-659). *Quarles* involved a defendant chased down in a New York supermarket by a police officer pursuing him on a rape complaint *(see, supra,* at 652). The officer, upon discovering that the defendant was wearing an empty shoulder holster, asked him where the gun was. The defendant nodded toward some empty cartons and responded, "the gun is over there" *(supra,* at 652). That statement was excluded at trial along with the gun itself and other subsequent statements because they were all obtained before the defendant was read his *Miranda* rights. The decision was affirmed by both the Appellate Division and the Court of Appeals. The United States Supreme Court, however, reversed, on certiorari, and remanded, holding that the evidence was erroneously suppressed. The Supreme Court concluded that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination" *(supra,* at 657).

An application of the "public safety" exception, whose apparent approbation by the Court of Appeals as a matter of State constitutional law is found in a laconic reference to *Quarles* in *People v Class* (67 NY2d 431, 433), will "in each case * * * be circumscribed by the exigency which justifies it" *(New York v Quarles, supra,* at 658). The *Quarles* court reasoned that "[i]n a kaleidoscopic situation * * * where spontaneity rather than adherence to a police manual is necessarily the order of the day" *(supra,* at 656), it is not the subjective motivation of the questioning officer that justifies application of the exception but "the immediate necessity of ascertaining the whereabouts of a [threat to the public safety]" *(supra,* at 657). A crucial consideration of the court was that "[i]n such a situation, if the police are required to recite the familiar *Miranda* warnings before asking the whereabouts of the gun, suspects * * * might well be deterred from responding" *(supra,* at 657).

Thus, the distinction is drawn by the court "between questions necessary to secure [a police officer's] safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect" *(supra,* 467 US, at 659). The Supreme

Court reiterated this distinction in a footnote distinguishing *Quarles* from a previous case, *Orozco v Texas* (394 US 324), in which four hours after a murder the defendant, after vigorous pre-*Miranda* interrogation, directed officers to where he had hidden a gun *(New York v Quarles, supra,* at 659, n 8). Recognizing that the *Orozco* court found that all the statements should be suppressed, the *Quarles* court pointed out that the questions about the gun in that case "were clearly investigatory [and] did not in any way relate to an objectively reasonable need to protect the police or the public from any immediate danger associated with the weapon" *(supra,* at 659, n 8).

■ Applying the above case law to the facts now before us, we find that the circumstances confronting the arresting officers did not sufficiently justify their pre-*Miranda* questioning of defendant. When the officers arrived at defendant's residence, he was unarmed and denied any possession of the shotgun. The only evidence at that point indicating the existence of the gun was statements by others that they saw defendant with a shotgun. Defendant did not struggle but was cooperative throughout his arrest. Nothing in the record indicates the occurrence of a crime other than criminal possession or, significantly, that there was any potential coperpetrator in the immediate vicinity *(cf., People v Howard,* 162 AD2d 615, 616, *lv denied* 77 NY2d 839). The vicinity itself was a rural residential area. In our view, these circumstances simply do not amount to the kind of "exigency requiring immediate action" by the police *(New York v Quarles, supra,* at 659, n 8) that would justify the need to submit defendant to pre-*Miranda* questioning in order to neutralize a volatile situation *(see, supra; see also, Matter of John C.,* 130 AD2d 246, 253-254; *cf., People v Howard, supra).*

Also of particular significance is the time frame within which the questioning took place. By the time the officers began pressing defendant to supply them with the gun's whereabouts, the area had been essentially secured and a search already conducted. Defendant had been handcuffed and was in a patrol car on his way to arraignment. It was not until after the initial search was proving unsuccessful that the officers at the scene radioed the patrol car to solicit the gun's location. Deputy Dedek then admonished defendant to "just tell us where it is" because the officers would locate it in any event. In our view, these events do not amount to those in which the *Quarles* exception is applicable, occasions "where

the arresting officers arrived in the midst of volatile situations and made brief immediate inquiries which were apparently more for the purpose of clarifying the situation and ascertaining for safety reasons the location of possible weapons, than to secure evidence of a crime" *(Matter of John C., supra,* at 253). The circumstances confronting the officers herein did not amount to a public safety crisis; their questioning was prompted in our view by a desire to gather the single most important piece of evidence linking defendant with a crime, rather than an overriding need to belie defendant's 5th Amendment rights in order to protect themselves or the public from any exigent danger. Accordingly, we find the County Court erred in applying the "public safety" exception to the case at bar. Defendant's motion to suppress the statements made in the patrol car should therefore have been granted.

We do, however, agree with County Court's denial of that part of defendant's motion to suppress the shotgun itself. In our view, County Court properly found the gun admissible on the independent basis of the inevitable discovery rule *(see, People v Payton,* 45 NY2d 300, *revd* 445 US 573; *People v Fitzpatrick,* 32 NY2d 499, *cert denied* 414 US 1033, 1050). Application of that rule allows courts to refuse to suppress secondary evidence otherwise wrongfully obtained if it can be shown that the evidence "would inevitably have been discovered irrespective of the initial wrong" *(People v Stith,* 69 NY2d 313, 318). Here, County Court reasoned that, had the police continued their search, the shotgun would inevitably have been found in the mailbox through that search or the subsequent arrival of either the shotgun's alleged true owner or an employee of the United States Postal Service. Defendant countered with the argument that the police only received permission from defendant's father to search *after* the gun was discovered. The suppression hearing record, however, reveals that Detective Bomysoad spoke with defendant's father before the radio call to the patrol car and the subsequent questioning of defendant. Bomysoad's testimony, uncontested by defendant, was sufficient to meet the People's burden of establishing consent to search.

We likewise reject defendant's argument that the shotgun's discovery, without defendant's statement, is "mere speculation". Given the subsequent opportunities for the gun to be found, including the police search and inevitable mail delivery, we find that the record shows by "a very high degree of

probability" *(People v Payton, supra,* at 313) that the evidence defendant sought to be suppressed would inevitably have been discovered. As such, the motion to suppress the shotgun was properly denied.

CASEY, MIKOLL, YESAWICH, JR., and CREW III, JJ., concur.

Ordered that the judgment is reversed, on the law, suppression motion granted to the extent that defendant's pre-*Miranda* statement should be suppressed and matter remitted to the County Court of Broome County for further proceedings not inconsistent with this court's decision.