Hancock, Jr., J.
(dissenting). In his appeal, defendant raises fundamental constitutional questions as to whether he may be totally deprived of his right to challenge the validity of a search warrant which he claims the police obtained illegally following an unlawful entry and warrantless search of his residence and for which the police allegedly lacked probable cause. Defendant sought an adversarial hearing before the suppression court in which he could attack the warrant because it was the product of the illegal police entry and search and also because the warrant application and the informational basis were deficient.
The critical question is whether the suppression court could properly deny him all information concerning the basis for the warrant, exclude him and his lawyer from all participation in or knowledge of the secret in-chambers proceedings between the court and the prosecutor, and render only an ex parte determination on the validity of the warrant instead of a decision on the merits after an adversarial adjudication. The majority of this Court holds that in view of alleged danger to the informant these extraordinary measures were warranted *588 and not violative of defendant’s constitutional rights. I disagree.
Depriving a defendant of any participation in or knowledge of a suppression hearing where the issues involve both probable cause and invalidity because of police misconduct is without precedent[1] and, I believe, conflicts with fundamental tenets of fairness and due process of law inherent in our Federal and State Constitutions (see, US Const 4th, 6th, 14th Amends; NY Const, art I, §§ 6, 12; Nardone v United States, 308 US 338, 341). Secret proceedings of this nature in which significant questions materially affecting guilt are decided in the absence and without the knowledge of the defendant or his counsel are repugnant to the concepts "of fair play which have 'evolved through centuries of Anglo-American constitutional history’, particularly as applied to the relationship 'between the individual and the government’ ” (People v Millan, 69 NY2d 514, 519-520 [quoting Anti-Fascist Comm, v McGrath, 341 US 123, 162 (Frankfurter, J., concurring)]). I, therefore, dissent.
I.
In this case, the guilt or innocence of defendant depends entirely on the validity of the warrant the police obtained to search his apartment residence. Defendant claims that on April 5, 1988 — the day before the police obtained the search warrant — three detectives entered the apartment without permission and interrogated his wife at length about defendant and the prior occupant of the apartment. While two of the detectives held his wife in one room, the third detective searched the entire premises. The police subsequently obtained and executed a search warrant for the apartment and defendant was indicted.
Defendant thereafter moved to suppress the evidence and for a disclosure of the warrant application and supporting material. Based on its confidential inspection of these documents and of the minutes of the proceedings before the *589 issuing Magistrate, Supreme Court prohibited defendant from having access to or knowledge of the application and of any related information. Although Supreme Court — after review of the warrant application — acknowledged that defendant’s suppression motion presented a material issue as to the possible taint from an illegal entry,[2] it concluded that that issue, as well as the adequacy of the basis for the warrant, should be determined privately in chambers.
In an in camera and ex parte proceeding, the court, in the presence of the prosecutor, “interviewed” police witnesses and the confidential informant. The court excluded defendant and his counsel from the hearing and barred them from any participation in or knowledge of the proceedings. Thus, defendant was denied his right to confront the witnesses against him, to cross-examine and to adduce affirmative evidence. Moreover, the court refused defense counsel’s request that counsel be permitted to submit questions for the court to ask in his absence (see, People v Darden, 34 NY2d 177, 181, supra) and ordered that defendant and his counsel be prohibited from having any access to the record of the proceedings or to any information or report pertaining thereto. At the close of the hearing, the court concluded, with no explanation of its factual conclusions, that there was an adequate basis for the warrant and that it had not been tainted by police misconduct.
II.
Contrary to what seems to be the premise of the majority’s decision, the principal issue in this case does not involve the propriety of excluding defendant from a hearing pertaining only to the adequacy of the application for the warrant. That determination (see, infra, part III) involves such questions as whether the application was facially consistent, whether the information supplied by the informant was false and whether its inclusion in the police affidavit amounted to perjury or reckless disregard for the truth (see, 1 LaFave and Israel, Criminal Procedure § 3.4, at 224; People v Velez, 147 Misc 2d 865, 868-871).
*590 The suppression court was faced with a second and entirely different factual issue relating to defendant’s attack on the warrant as the product of police misconduct — the classic "fruit of the poisonous tree” determination. Here, the questions did not involve the adequacy of the application but: (1) whether the police had violated defendant’s right to be free from unlawful searches and seizures by entering his home on April 5, 1988 without permission and conducting a search of it without a warrant; and, (2) if so, whether any information secured in the illegal search was in some way transmitted to or used by the police who applied for and obtained the warrant the next day — i.e., " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint’ ” (Wong Sun v United States, 371 US 471, 488 [quoting Maguire, Evidence of Guilt, at 221]; see also, People v Stith, 69 NY2d 313, 318).
These questions pertain to alleged police misconduct which, if established, would amount to an obvious invasion of defendant’s expectation of privacy and a violation of his constitutional rights of far greater magnitude than that involved in the limited issue of the existence of probable cause for the warrant. At a hearing on police misconduct, defense counsel, had he been permitted to attend, could logically have inquired of the police and of other witnesses including defendant’s wife, if she had been called, about the permission of the police to enter the apartment; what they said to defendant’s wife and what she said to them; where the police went and where defendant’s wife and child were in the apartment after the police entered; whether, as defendant claims, two of the officers detained his wife in one room while a third police officer searched the entire apartment; what, if any, contraband the police discovered in the apartment and where they discovered it; and what, if any, information concerning any such contraband was transmitted to the police who subsequently applied for the search warrant.
To hold, as the majority does, that the police may be charged with a violation of a citizen’s constitutional rights of this gravity and yet not be made to answer for it in a contested hearing defeats the deterrent purpose of the exclusionary rule (see, People v Stith, supra, at 317). Shrouding allegations of police misconduct in secrecy and relying wholly on the police and prosecutor’s account of the facts subvert the *591 application of the exclusionary rule because then prosecutors have the unfair advantage of presenting an unrebutted and untested version of the disputed police actions. As we have noted, "if the People are permitted to use the [improperly] seized evidence, the exclusionary rule’s purpose is completely frustrated, a premium is placed on the illegal police action and a positive incentive is provided to others to engage in similar lawless acts in the future” (People v Bigelow, 66 NY2d 417, 427).
That the traditional concepts of a fair trial and due process are deeply rooted in the adversarial system of resolving factual questions is beyond question. In the words of Justice Frankfurter "[o]urs is the accusatorial as opposed to the inquisitorial system. Such has been the characteristic of Anglo-American criminal justice since it freed itself from practices borrowed by the Star Chamber” (Watts v Indiana, 338 US 49, 54; see generally, Neef and Nagel, The Adversary Nature of the American Legal System from a Historical Perspective, 20 NY L Forum 123,123-126).
The issue here is whether, in lieu of a decision by the suppression court after a contested hearing on the legality of the police conduct, defendant must be content with what amounts to no more than a paternalistic assurance by the court that it has reviewed the facts in chambers and has decided that, although the defendant may believe otherwise, the police "didn’t violate his rights, after all”. The suggestion that a defendant must place his faith entirely in the judgment and perception of a fact finder who, in defendant’s absence, will hear only the prosecution’s side of the police misconduct charge is inimical to any accepted notion of adversarial due process. Given the variations, contrasts and contradictions in testimony inherent in a disputed issue of police misconduct, one can hardly think that, with input only from the prosecution, any Judge — no matter how conscientious — could effectively safeguard the defendant’s fundamental rights as a substitute for "the unique, indispensable presence of at least the 'single-minded counsel for the accused’ ” (People v Darby, 75 NY2d 449, 454 [quoting People v Rosario, 9 NY2d 286, 290]). Nor is the severity of the rights deprivation lessened because two appellate courts, on their review of the in camera proceedings, have pronounced that "there was support for the determination” (majority opn, at 580) of the hearing court on probable cause and "sufficient evidence, that there was no taint” (majority opn, at 587). No amount of appellate review of *592 the proceedings and of the suppression court’s determination can change the record or erase the critical flaw — that the determination concerning defendant’s rights was made on presentation of only one side of the issue, at a hearing from which defendant was excluded, and on information which was kept secret from him. The law does not permit it.
In Alderman v United States (394 US 165), the Supreme Court rejected the Government’s claim that defendants’ challenge to their convictions as tainted by illegal police wiretapping could be conducted ex parte and in camera, stating:
"The United States concedes that when an illegal search has come to light, it has the ultimate burden of persuasion to show that its evidence is untainted * * * With this task ahead of them, and if the hearings are to be more than a formality and petitioners not left entirely to reliance on government testimony, there should be turned over to them the records of those overheard conversations which the Government was not entitled to use in building its case against them * * *
"It may be that the prospect of disclosure will compel the Government to dismiss some prosecutions in deference to national security or third-party interests. But this is a choice the Government concededly faces with respect to material which it has obtained illegally and which it admits, or which a judge would find, is arguably relevant to the evidence offered against the defendant” (id., at 183-184 [emphasis added]).
It is true, of course, that defendants have sometimes been excluded from warrant proceedings when the narrow issues raised pertain to adequacy of the application or probable cause (see, e.g., People v Darden, 34 NY2d 177, supra; People v Goggins, 34 NY2d 163; People v Seychel, 136 Mise 2d 310). The majority, however, assumes, without discussion, that these Darden/Seychel procedures are properly applicable to challenges based on police misconduct and taint (see, majority opn, at 586). But Darden/Seychel procedures are permissible only to address probable cause and Alfinito/Franks challenges. Indeed, the Seychel court recognized that in Goggins and Darden our Court "stressed that such [ ] procedure[s] [are] appropriate only for a probable cause determination” (People v Seychel, supra, at 312). As this Court stated in People v Malinsky (15 NY2d 86):
*593 "The importance of the privilege [of nondisclosure] to successful criminal investigation is self-evident but this does not mean it may be successfully invoked in every case. Of necessity, its 'applicability* is limited by 'fundamental requirements of fairness’ * * * and, accordingly, the privilege may not be availed of, this court wrote in People v.
Coffey * * * when its assertion would seriously prejudice the defense 'by making a fair hearing impossible’ ” (id., at 92).
No one can deny that pretrial suppression hearings may determine the outcome of the prosecution or that full participation and adequate representation by counsel may be as essential to a proper defense then as during the trial itself (see, e.g., United States v Wade, 388 US 218, 225; Powell v Alabama, 287 US 45; United States v Clarke, 475 F2d 240, 245 [2d Cir 1973]; 4 LaFave, Search and Seizure § 11.2 [d], at 245-247 [2d ed]). A hearing to suppress in a drug possession case— where guilt usually depends entirely on the admissibility of the evidence seized — is often the most critical stage in the entire proceeding. While considerations of safety may justify nondisclosure of the informant’s identity and other information in probable cause determinations, as in Darden and Seychel, these considerations do not apply where the issue is whether the police have obtained the evidence in advance of the warrant in outright violation of defendant’s constitutional rights.
III.
If there had been no claim that the warrant was the product of the illegal police conduct on April 5, the suppression court would have had before it only questions relating to the facial adequacy of the warrant application or to issues of the type raised in People v Alfinito (16 NY2d 181) and Franks v Delaware (438 US 154). Had that been the case, I would still dissent.
No authority is cited for excluding the defendant and his counsel from any participation in or knowledge of the proceedings and depriving them of any access to the warrant affidavit or information pertaining to its contents. (See, supra, at 588, n 1.) To mount an Alfinito/Franks challenge, a defendant must point specifically to the portions of the warrant affidavit claimed to be false and meet the burden of proving that the *594 challenged statements are false and that their inclusion in the affidavit constituted perjury or reckless disregard for the truth (see, People v Velez, 147 Misc 2d 865, 870-871, supra; 1 LaFave and Israel, Criminal Procedure § 3.4, at 224). The People have not suggested, nor has anyone, how the defendant here could have questioned the facial validity of the warrant application for consistency or staleness or have singled out specific parts of it and proven them to be false if he could not see the application.[3] Indeed, we reasoned in Malinsky (supra) that:
”[W]here disclosure is demanded by the requirements of a fair trial — where, in other words, to refuse disclosure would completely deprive the defense of the opportunity of showing that there was in truth no reliable informer or, if there was, that his communication to the police was different from that testified to and that, for either of these reasons, the police did not have probable cause to make the arrest — the prosecution must either disclose or run the risk of having the arrest and search held illegal” (id., at 94).
As the court in People v Velez (supra) aptly observed:
"There is no escaping from the clear statement of People v McCall (17 NY2d 152, 159): 'A refusal to permit a defendant to examine the facts upon which his privacy has been broken into amounts to saying that any search warrant * * * is all right if a Judge has seen fit to sign it.’ This is particularly true with respect to an Alfinito/Franks issue, as to which the defense must make specific, factual allegations to merit a hearing on possible affiant perjury. Obvious inconsistencies apparent on the face of the affidavit rarely, if ever, occur. Defense counsel must know the alleged facts so that they may be discussed with, and perhaps contradicted by, the client or other defense witnesses.
*595 "Accordingly, the defense is entitled to at least a 'report’, a la Darden (supra), of what the informant said to provide the basis for the search warrant” (id., at 870-871).
Nothing in People v Darden (supra), People v Seychel (supra) or in any other case sanctions a procedure under which a defendant has been prevented from making any challenge to the issuance of the warrant because the court denied all access to the information necessary for the challenge. As with his thwarted efforts to attack the warrant before the suppression court as resulting from police misconduct, defendant was told "not to worry”, for the court, in its wisdom, in a closed session with the prosecutor, would see to it that his rights were fully protected. I respectfully submit that under our judicial process and our State and Federal Constitutions, the defendant was entitled to more, much more.
Judges Titone, Bellacosa and Smith concur with Acting Chief Judge Simons; Judge Hancock, Jr., dissents and votes to reverse in a separate opinion in which Judge Kaye concurs.
Order affirmed.

. The majority’s holding today is unprecedented. None of the cases cited by the majority involve the question of whether defendant may be excluded from and deprived of all information pertaining to warrant review proceedings addressing police misconduct and possible taint (see, majority opn, at 583 [citing, e.g., People v Darden, 34 NY2d 177; People v Castro, 29 NY2d 324]). Indeed, none of the cases listed involve the complete exclusion of defendant from any type of warrant review proceeding and the deprivation of all information pertaining to those proceedings (see, id.).

. Indeed, the People concede that after the in camera review of the warrant application, the court ruled that "there was a valid and material dispute between the parties as to whether the police had entered defendant’s apartment the day before the search warrant was executed and whether that entry, if it was illegal, had tainted the subsequent search conducted pursuant to the warrant”.

. No case cited by the majority supports the proposition that "an in camera hearing to determine if the [supporting] affidavit contained perjury” (majority opn, at 586) should be undertaken only when the affidavit "appear[s] perjurious on its face” (id. [emphasis added]). It seems evident that the determination on the issues of falsity and whether the police officer has committed perjury or made statements in reckless disregard of the truth will require demonstration of facts outside the affidavit. Indeed, as the Velez court points out, inconsistencies on the face of the affidavit rarely occur (see, People v Velez, supra [quoted infra, at 594]).