*447 Order of disposition, Family Court, New York County (Susan R. Larabee, J.), entered on or about March 2, 2011, which adjudicated appellant a juvenile delinquent upon a fact-finding determination that he committed an act that, if committed by an adult, would constitute attempted assault in the third degree, and imposed a conditional discharge, unanimously affirmed, without costs.
The complainant’s mother summoned police after she spotted appellant, who she told the dispatcher had robbed her son. According to one of the two officers who arrived at the mother’s location, she pointed at a nearby building and said that youths responsible for “something that happened in the past with her son” were inside the lobby. The other officer recalled that the woman pointed to two boys who were standing in front of the building and stated that the one wearing a gray jacket had robbed her son the previous day. That same officer approached the building, and the two youths began to slowly walk away. He commanded them to stop, and they did. The officer handcuffed appellant, the youth wearing the gray jacket. According to the officer, he did not intend to arrest appellant when he placed the handcuffs on appellant, but rather to restrain him while he and his partner investigated. The officer acknowledged that appellant had not tried to run from the scene, and he did not indicate that there was any other compelling reason to place handcuffs on him.
After the officer placed the handcuffs on appellant, the complainant’s mother approached, along with the complainant and his father. It is unclear precisely how much time passed between the detention and the arrival of the complainant at the scene, but a fair reading of the record permits the inference that it was a short period of time, since both officers indicated that the complainant arrived while they were questioning the youths. The officers did not direct the complainant to the scene, nor did they even know that he was in the vicinity. The officer asked the mother whether appellant was the one she had pointed out and she said he was. When the officer then asked the complainant whether appellant was “the kid that robbed you,” the complainant answered that he was. Shortly thereafter, it was mistakenly determined that the complainant had filed a complaint three days earlier alleging harassment. In reality, he had alleged that he had been robbed. Because harassment is not a charge for which a juvenile can be arrested, appellant was released at the scene to the custody of his older sister. Later that day, after the complainant had spoken to officers at *448 the precinct, appellant was arrested and charged with attempted robbery.
Appellant moved to suppress the complainant’s identification of him. He argued that the identification was the fruit of an unlawful arrest, which was effected when the police officer placed him in handcuffs. Appellant asserted that there was no probable cause for the “arrest” because it was based strictly on the complainant’s mother’s statement that appellant had robbed her son, a statement that the officers made no effort to corroborate. He further argued that there were no exigent circumstances justifying the handcuffing, such as a threat to the officers’ safety or an indication that appellant was going to flee. Finally, appellant claimed that the circumstances surrounding the identification by the complainant, including that appellant was in handcuffs next to a uniformed officer, and the fact that the officer asked the complainant’s mother if appellant was her son’s assailant before asking the complainant, made the procedure unduly suggestive. The court denied appellant’s motion, finding there to have been nothing untoward about the officer’s having placed appellant in handcuffs.
On appeal, appellant has abandoned his argument that the identification procedure used by the officers was unduly suggestive. Instead, he contends that his being handcuffed was tantamount to an arrest, that there was no probable cause underlying the arrest, and that the identification by the complainant was the fruit of that unlawful arrest and must therefore be suppressed.
Appellant is correct that, under the circumstances presented, where there is no evidence that appellant was likely to flee or cause physical harm, the police had no justification for placing him in handcuffs. Nevertheless, appellant relies on the fact that he was handcuffed only to establish that he was arrested. However, whether or not he was actually arrested, and whether the arrest was justified, is not determinative, because the inevitable discovery doctrine applies to the facts here. Under that doctrine, the exclusionary rule is inapplicable where “the linkage between the police misconduct and [the] evidence is interrupted by intervening events . . . The question is whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint” (People v Stith, 69 NY2d 313, 317-318 [1987] [internal quotation marks and citations omitted]).
The doctrine applies here because, whether appellant was *449 under arrest or not, the complainant would have had the same opportunity to point him out. In other words, there is no reason to believe that the “arrest” caused appellant to be in the vicinity when the complainant arrived, where he would not otherwise have been but for the “arrest” (see People v Serrano, 231 AD2d 748, 749 [1996] [confirmatory identification of defendant after defendant was arrested and detained at scene was not tainted, even if arrest was illegal, because “(t)here was no significant temporal or spatial difference between the transmitting officer’s post-arrest observations and pre-arrest observations”]). Indeed, appellant does not challenge the presentment agency’s position that the police had reasonable suspicion upon which to stop appellant and question him. According to the officers’ testimony, questioning appellant and his companion is precisely what they were doing at the moment when the complainant showed up. Because both officers testified that the complainant arrived while they were conducting that questioning, it is evident that the identification was inevitable. Accordingly, suppression of the identification was properly denied. Concur — Mazzarelli, J.P., Sweeny, Moskowitz, Abdus-Salaam and Manzanet-Daniels, JJ.