People v Alexander (2024 NY Slip Op 02207)

People v Alexander

2024 NY Slip Op 02207

Decided on April 24, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 24, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
CHERYL E. CHAMBERS
BARRY E. WARHIT
LOURDES M. VENTURA, JJ.

2021-05206
 (Ind. No. 21/19)

[*1]The People of the State of New York, respondent,
v
Timothy Alexander, appellant.

Kelley M. Enderley, Poughkeepsie, NY, for appellant.
Anthony P. Parisi, District Attorney, Poughkeepsie, NY (Kirsten A. Rappleyea of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the County Court, Dutchess County (Jessica Segal, J.), rendered June 28, 2021, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Peter M. Forman, J.), of that branch of the defendant's omnibus motion which was to suppress physical evidence.
ORDERED that the judgment is affirmed.
On November 15, 2018, at approximately 11:30 p.m., law enforcement officials began investigating the death of Terrie DeGelormo (hereinafter the victim), who was found with puncture wounds in the driveway of her home. Neighbors told the police that they had observed a silver Jeep in the neighborhood earlier that evening. On the morning of November 16, 2018, the police went to the home of the defendant, who was the victim's former husband, where they observed a silver Jeep parked in the driveway. Thereafter, the police spoke with the defendant and he made certain inculpatory statements, some of which led the police to Lake Oniad, where the police recovered two boots, fabric, gloves, and a knife.
After a hearing, the County Court granted that branch of the defendant's omnibus motion which was to suppress certain statements the defendant made to law enforcement officials as violating his Fifth Amendment right to remain silent. However, the court, inter alia, denied that branch of the defendant's omnibus motion which was to suppress physical evidence that the police recovered by and in the lake as fruits of the defendant's illegally obtained statement. The court held that the defendant lacked standing to contest the seizure of the items discarded in the lake, and that, in any event, the People met their burden of establishing that the evidence recovered by and in the lake would have been discovered through typical search techniques utilized by law enforcement in a homicide investigation. After a jury trial, the defendant was convicted of murder in the second degree.
Contrary to the People's contention, the defendant's purported lack of standing to contest the seizure of the evidence recovered by and in the lake was not relevant to his contention that this evidence should be suppressed as fruits of his statements, which the County Court had determined were obtained in violation of the defendant's Fifth Amendment right to remain silent (see [*2]generally People v Fitzpatrick, 32 NY2d 499, 506; United States v Olivares-Rangel, 458 F3d 1104, 1117 [10th Cir]). However, "[e]vidence obtained as a result of information derived from an unlawful search or other illegal police conduct is not inadmissible under the fruit of the poisonous tree doctrine where the normal course of police investigation would, in any case, even absent the illicit conduct, have inevitably led to such evidence" (People v Fitzpatrick, 32 NY2d at 506). In applying the inevitable discovery exception, the People must demonstrate a "very high degree of probability" that normal police procedures would have uncovered the challenged evidence "independently of [a] tainted source" (People v Turriago, 90 NY2d 77, 86 [internal quotation marks omitted]; see People v Watson, 188 AD2d 501, 501). As a matter of New York constitutional law, primary evidence, i.e., the "very evidence . . . obtained during or as the immediate consequence" of the illegal conduct, is still subject to exclusion even if it would most likely have been discovered in the course of routine police procedures (People v Stith, 69 NY2d 313, 318; see People v Turriago, 90 NY2d at 86). However, "the inevitable discovery exception can validly apply to permit the use of secondary evidence, obtained as a result of information gleaned from or by other exploitation of, the tainted primary evidence" (People v Turriago, 90 NY2d at 86).
Here, contrary to the defendant's contention, the physical evidence recovered by and in the lake was not primary evidence, i.e., the very evidence obtained during or as the immediate consequence of the police's illegal conduct to which the inevitable discovery exception does not apply (see People v Stith, 69 NY2d at 318; People v Fitzpatrick, 32 NY2d at 506-507; People v Watson, 188 AD2d at 501). Contrary to the defendant's further contention, the People established with a very high degree of probability that normal police procedures would have inevitably led to the discovery of the evidence by and in the lake independent of the tainted source (see People v Hunter, 56 AD3d 684; People v Brown, 259 AD2d 985, 985; People v Watson, 188 AD2d at 501; People v Dempsey, 177 AD2d 1018, 1019). Accordingly, the County Court properly denied that branch of the defendant's motion which was to suppress the physical evidence that the police recovered by and in the lake.
The defendant contends that the County Court should not have denied his request for the Criminal Jury Instruction circumstantial evidence charge, as the People's evidence in this case was entirely circumstantial. Contrary to the People's contention, this was not a case where both direct and circumstantial evidence were employed to demonstrate the defendant's culpability, thereby negating the need for the requested charge (see People v James, 147 AD3d 1211, 1213). Although the People's witnesses testified that the victim's DNA was recovered from the gloves, and that her DNA and the defendant's DNA were recovered from inside the silver Jeep, this evidence was circumstantial (see People v Jones, 105 AD3d 1059, 1060; People v Taylor, 6 AD3d 556, 557; see also People v James, 147 AD3d at 1213). Accordingly, upon the defendant's request, the court was required to give the circumstantial evidence charge (see People v Hardy, 26 NY3d 245, 249).
Although the County Court did give a modified circumstantial evidence charge to the jury, we reject the People's contention that the circumstantial evidence charge actually given by the court was sufficient (see People v James, 147 AD3d at 1214; cf. People v Wlasiuk, 136 AD3d 1101, 1104). In its charge to the jury, the court failed to inform the jury that the evidence presented to establish the defendant's guilt was solely circumstantial (see People v Taylor, 6 AD3d at 557; People v Lynch, 309 AD2d 878, 878). Accordingly, the jury was not aware of its duty to apply the circumstantial evidence standard to the People's entire case (see People v Sanchez, 61 NY2d 1022; People v Taylor, 6 AD3d at 557; People v Lynch, 309 AD2d at 878). Nevertheless, this error was harmless, as there was overwhelming evidence of the defendant's guilt and there is no significant probability that the error contributed to his conviction (see People v Brian, 84 NY2d 887, 889; People v Crimmins, 36 NY2d 230, 242; People v Cuevas, 207 AD3d 557, 559).
The defendant's remaining contention is without merit.
The sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
CONNOLLY, J.P., CHAMBERS, WARHIT and VENTURA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court