THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CALVIN CLANTON, Appellant. [57 NYS3d 775]—

Appeal from a judgment of the Monroe County Court (Vincent M. Dinolfo, J.), rendered May 7, 2015. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree.

It is hereby ordered that the judgment so appealed from is affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]). The charges arose from an incident in which police officers detected the odor of marihuana emanating from a vehicle they had stopped for a traffic violation. Defendant, a passenger in that vehicle, attempted to flee from the scene upon exiting the vehicle but was detained by the officers. In response to one officer's

pre-*Miranda* inquiry, defendant admitted to possessing a firearm. The officer then searched defendant and found a loaded firearm on his person. County Court subsequently refused to suppress defendant's statement to the police and the firearm.

Defendant contends that the court should have rejected the officer's testimony offered in support of the decision of the police to search the vehicle and its occupants inasmuch as there was no concrete evidence of marihuana possession presented at the suppression hearing. We reject that contention. It is well established that the odor of marihuana emanating from a vehicle, " 'when detected by an officer qualified by training and experience to recognize it, is sufficient to constitute probable cause to search a vehicle and its occupants' " (*People v Ricks*, 145 AD3d 1610, 1611 [2016]; see *People v Chestnut*, 43 AD2d 260, 261-262 [1974], *affd* 36 NY2d 971 [1975]; *People v Grimes*, 133 AD3d 1201, 1202 [2015]; *People v Cuffie*, 109 AD3d 1200, 1201 [2013], *lv denied* 22 NY3d 1087 [2014]). Here, the officer testified that, as soon as the front passenger-side window was rolled down, he "immediately observed the strong odor of burnt mari[h]uana coming from within the vehicle" and contemporaneously saw "what appeared to [him] to be ashes all over [defendant]'s pants, in his lap" (*see generally People v Ponzo*, 111 AD3d 1347, 1348 [2013]; *People v Guido*, 175 AD2d 364, 365 [1991], *lv denied* 78 NY2d 1076 [1991]). The officer further testified that he also observed "numerous small remnants of mari[h]uana blunts" in the plastic ashtray in the passenger-side door (*see generally People v Semanek*, 30 AD3d 547, 547-548 [2006]). Significantly, the officer also testified that he had received "training in the Academy" regarding the "physical characteristics and odor" of marihuana, and that he had encountered the smell of burnt marihuana "thousands of times" in the field. "It is well settled that great deference should be given to the determination of the suppression court, which had the opportunity to observe the demeanor of the witnesses and to assess their credibility, and its factual findings should not be disturbed unless clearly erroneous" (*People v Layou*, 134 AD3d 1510, 1511 [2015], *lv denied* 27 NY3d 1070 [2016], *denied reconsideration* 28 NY3d 932 [2016]). Here, we see "no basis to disturb the court's credibility assessments of the officer[ ] inasmuch as [n]othing about the officer['s] testimony was unbelievable as a matter of law, manifestly untrue, physically impossible, contrary to experience, or self contradictory" (*People v Walker*, 128 AD3d 1499, 1500 [2015], *lv denied* 26 NY3d 936 [2015] [internal quotation marks omitted]).

We agree with defendant, however, that the court should

have suppressed the statement defendant made to the police in response to police questioning inasmuch as defendant was in custody at the time but had not waived his *Miranda* rights. After defendant had been restrained and handcuffed, an officer asked him, "why are you fighting us," or "[w]hy did you run from the car." As noted above, at the time the question was asked, defendant had been physically restrained and handcuffed after he had fled from an attempted body search and had engaged in a struggle with the police, and we therefore conclude that *Miranda* warnings were required. For purposes of *Miranda*, "interrogation" refers to "express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect" (*Rhode Island v Innis*, 446 US 291, 301 [1980] [footnotes omitted]; *see People v Ferro*, 63 NY2d 316, 322 [1984], *cert denied* 472 US 1007 [1985]; *see also People v Lightner*, 56 AD3d 1274, 1275 [2008], *lv dismissed* 12 NY3d 760 [2009]). "Although the police may ask a suspect preliminary questions at a crime scene in order to find out what is transpiring . . . , where criminal events have been concluded and the situation no longer requires clarification of the crime or its suspects, custodial questioning will constitute interrogation" (*People v Rifkin*, 289 AD2d 262, 262-263 [2001], *lv denied* 97 NY2d 759 [2002]; *see People v Bastian*, 294 AD2d 882, 884 [2002], *lv denied* 98 NY2d 694 [2002]; *People v Soto*, 183 AD2d 926, 927 [1992]). Here, the interaction between defendant and the officers had traveled far beyond a "threshold crime scene inquiry" (*People v Brown*, 49 AD3d 1345, 1346 [2008]) and, under such circumstances, it was likely that the officer's question "would elicit evidence of a crime and, indeed, it did elicit an incriminating response" (*id.*; *see People v Hardy*, 5 AD3d 792, 793 [2004], *lv denied* 3 NY3d 641 [2004], *denied upon reconsideration* 3 NY3d 675 [2004]; *see also Lightner*, 56 AD3d at 1275).

In spite of the unlawful pre-*Miranda* custodial interrogation of defendant, we nevertheless conclude that the court was not required to suppress the firearm. Indeed, the court properly determined that "[a] cursory search of [d]efendant's person would have resulted in finding the subject gun regardless of any admission by [d]efendant that a gun was on his person." Under the doctrine of inevitable discovery, evidence that would otherwise have been suppressed pursuant to the fruit of the poisonous tree doctrine will be deemed admissible " 'where the normal course of police investigation would, in any case, even absent the illicit conduct, have inevitably led to such evidence' "

(*People v Garcia*, 101 AD3d 1604, 1605-1606 [2012], *lv denied* 20 NY3d 1098 [2013], quoting *People v Fitzpatrick*, 32 NY2d 499, 506 [1973], *cert denied* 414 US 1033 [1973]). Here, defendant's statement admitting his possession of the handgun was the tainted primary evidence arising from the unlawful pre-*Miranda* custodial interrogation and must be suppressed (*see People v Stith*, 69 NY2d 313, 320 [1987]); however, the inevitable discovery doctrine applies to the handgun as secondary evidence arising therefrom (*see People v Turriago*, 90 NY2d 77, 86 [1997], *rearg denied* 90 NY2d 936 [1997]; *People v Dempsey*, 177 AD2d 1018, 1019 [1991], *lv denied* 79 NY2d 946 [1992]). We conclude that there was a " 'very high degree of probability' " that the officers would have discovered the firearm, which was found inside the right leg of defendant's pants during a lawful and routine search of defendant's person prior to his attempted flight (*Turriago*, 90 NY2d at 86; *see People v Beckwith*, 303 AD2d 594, 595 [2003]; *Dempsey*, 177 AD2d at 1019; *People v Deresky*, 134 AD2d 512, 512-513 [1987], *lv denied* 71 NY2d 895 [1988]; *cf. People v Bookless*, 120 AD2d 950, 950-951 [1986], *lv denied* 68 NY2d 767 [1986]).

Although defendant's statement admitting to the possession of the firearm should have been suppressed, we conclude that the particular circumstances of this case permit the rare application of the harmless error rule to defendant's guilty plea (*see Beckwith*, 303 AD2d at 595). "[W]hen a conviction is based on a plea of guilty an appellate court will rarely, if ever, be able to determine whether an erroneous denial of a motion to suppress contributed to the defendant's decision, unless at the time of the plea he states or reveals his reason for pleading guilty" (*People v Grant*, 45 NY2d 366, 379-380 [1978]). "The *Grant* doctrine is not absolute, however, and [the Court of Appeals has] recognized that a guilty plea entered after an improper court ruling may be upheld if there is no 'reasonable possibility that the error contributed to the plea' " (*People v Wells*, 21 NY3d 716, 719 [2013]). In our view, because the firearm was not suppressed and would have been admissible at trial, there is no reasonable possibility that the court's error in failing to suppress defendant's statement admitting possession of the firearm contributed to his decision to plead guilty (*cf. Grant*, 45 NY2d at 379-380).

All concur except Lindley and Troutman, JJ., who dissent and vote to reverse in accordance with the following memorandum.

Lindley and Troutman, JJ. (dissenting). We respectfully dissent. We agree with the majority's conclusion that County

Court erred in denying that part of defendant's omnibus motion seeking suppression of the statement he made to the police in which he admitted possession of the firearm. Unlike the majority, however, we cannot conclude that the error is harmless. Where, as here, "a conviction is based on a plea of guilty[,] an appellate court will rarely, if ever, be able to determine whether an erroneous denial of a motion to suppress contributed to the defendant's decision, unless at the time of the plea he [or she] states or reveals his [or her] reason for pleading guilty. This is especially true when the defendant has unsuccessfully sought to suppress a confession" (*People v Grant*, 45 NY2d 366, 379-380 [1978]; *see People v Wells*, 21 NY3d 716, 717-718 [2013]; *cf. People v Lloyd*, 66 NY2d 964, 965 [1985]). In the absence of proof "that [a defendant] would have [pleaded guilty] even if his [or her] motion had been granted, harmless error analysis is inapplicable" (*People v Henry*, 133 AD3d 1085, 1087 [2015]). Here, there is no such proof (*see People v Coles*, 62 NY2d 908, 910 [1984]; *cf. Lloyd*, 66 NY2d at 965). Although the firearm is admissible and was found on defendant's person (*see People v Beckwith*, 303 AD2d 594, 595 [2003]), we cannot say that the erroneous denial of the motion to suppress the statement did not contribute to defendant's decision to accept the plea offer that was extended to him by the People. We would therefore reverse the judgment, vacate the plea, grant that part of the omnibus motion seeking to suppress the statement at issue, and remit the matter to County Court for further proceedings on the indictment. Present—Carni, J.P., Lindley, DeJoseph, Troutman and Scudder, JJ.