People v Robles (2022 NY Slip Op 07336)

People v Robles

2022 NY Slip Op 07336

Decided on December 23, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 23, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., NEMOYER, WINSLOW, BANNISTER, AND MONTOUR, JJ.

779 KA 19-02171

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
EDDIE ROBLES, DEFENDANT-APPELLANT. 

CAMBARERI & BRENNECK, SYRACUSE (MELISSA K. SWARTZ OF COUNSEL), FOR DEFENDANT-APPELLANT.
EDDIE ROBLES, DEFENDANT-APPELLANT PRO SE.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (KAITLYN M. GUPTILL OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Onondaga County (Gordon J. Cuffy, A.J.), rendered August 16, 2019. The judgment convicted defendant upon his plea of guilty of attempted criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon his plea of guilty of attempted criminal possession of a weapon in the second degree (Penal Law §§ 110.00, 265.03 [3]). The charges arose after two police officers heard a dispatch reporting gun shots fired near a particular intersection. Based on that information, one of the police officers used his department-issued iPad to review camera footage of the incident. Among other things, the officer observed a black male, thin to medium build, about five feet eight inches tall, dressed in dark clothing, and walking a yellow dog on a pink leash. Approximately two hours later as the officers were patrolling near the area of the intersection, they observed defendant, who partially matched the suspect in the video, walking a few blocks from the incident. The officers approached defendant, detained him and, after a struggle, recovered a gun from his person. Subsequently, in response to a pre-Miranda inquiry from one of the officers, defendant admitted to possessing the firearm. Supreme Court refused to suppress both the statement and the evidence of the firearm.
Defendant contends in his main and pro se supplemental briefs that the court erred in refusing to suppress the handgun found on his person inasmuch as the officers did not have reasonable suspicion to detain and subsequently frisk him (see generally People v De Bour, 40 NY2d 210, 223 [1976]). We reject that contention. The evidence at the suppression hearing established that the officers had an articulable reason for initially approaching defendant "to conduct a common-law inquiry, i.e., they had 'a founded suspicion that criminal activity [was] afoot' " (People v Mack, 49 AD3d 1291, 1292 [4th Dept 2008], lv denied 10 NY3d 866 [2008]). More particularly, the officers encountered defendant within a few blocks of the location identified in the dispatch. Defendant was wearing clothing similar to that worn by the suspect observed in the video and was walking what appeared to be the same yellow dog with a pink leash. Considering the totality of the circumstances, including the information the police had from the video and the testimony from one of the officers that he noticed a bulge in defendant's front waistband, we conclude that the officers thereafter developed reasonable suspicion to detain defendant (see People v Benjamin, 51 NY2d 267, 271 [1980]; see also People v Williams, 136 AD3d 1280, 1283 [4th Dept 2016], lv denied 27 NY3d 1141 [2017], lv denied 29 NY3d 954 [2017]). Contrary to defendant's further contention, despite some inconsistencies, the officers' testimony was not so "incredible or improbable as to warrant disturbing the . . . court's determination of credibility" (People v Addison, 199 AD3d 1321, 1322 [4th Dept 2021] [internal [*2]quotation marks omitted]).
We agree with defendant's contention in his main brief, however, that the court should have suppressed the statement defendant made in response to the officer's questions inasmuch as defendant was in custody at the time but had not waived his Miranda rights. " 'The term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response' " (People v Ferro, 63 NY2d 316, 322 [1984], cert denied 472 US 1007 [1985]; see People v Clanton, 151 AD3d 1576, 1578 [4th Dept 2017]). "Although the police may ask a suspect preliminary questions at a crime scene in order to find out what is transpiring . . . , where criminal events have been concluded and the situation no longer requires clarification of the crime or its suspects, custodial questioning will constitute interrogation" (Clanton, 151 AD3d at 1578 [internal quotation marks omitted]). Here, after defendant had been restrained and handcuffed, an officer asked defendant, "what's going on? Are you all right? Are you okay?" Defendant responded, "you saw what I had on me. I was going to do what I had to do." We conclude that the interaction between defendant and the officer "had traveled far beyond a 'threshold crime scene inquiry' " and, under the circumstances, it was likely that the officer's particular questions " 'would elicit evidence of a crime and, indeed, it did elicit an incriminating response' " (id.; cf. People v Kenyon, 108 AD3d 933, 936 [3d Dept 2013], lv denied 21 NY3d 1075 [2013]).
Although we conclude that the court should have suppressed defendant's statement to police, we further conclude that the particular circumstances of this case permit the rare application of the harmless error rule to defendant's guilty plea (see Clanton, 151 AD3d at 1579). "[W]hen a conviction is based on a plea of guilty an appellate court will rarely, if ever, be able to determine whether an erroneous denial of a motion to suppress contributed to the defendant's decision, unless at the time of the plea he [or she] states or reveals his [or her] reason for pleading guilty" (People v Grant, 45 NY2d 366, 379-380 [1978]). "The Grant doctrine is not absolute, however, and [the Court of Appeals has] recognized that a guilty plea entered after an improper court ruling may be upheld if there is no 'reasonable possibility that the error contributed to the plea' " (People v Wells, 21 NY3d 716, 719 [2013]). Here, the court properly refused to suppress the firearm found on defendant's person. Because that evidence would have been admissible at trial, we conclude that there is no reasonable possibility that the court's error in failing to suppress defendant's statement admitting possession of the firearm contributed to his decision to plead guilty (see Clanton, 151 AD3d at 1579; cf. Grant, 45 NY2d at 379-380).
Defendant's contention in his main brief that his plea was not knowingly, intelligently, and voluntarily entered because the court failed to advise him of all the constitutional rights he would be forfeiting upon pleading guilty is unpreserved for our review inasmuch as he failed to move to withdraw the plea or to vacate the judgment of conviction (see People v Williams, 185 AD3d 1535, 1535 [4th Dept 2020], lv denied 35 NY3d 1116 [2020]). In any event, defendant's contention is without merit. Reviewing "the record as a whole and the circumstances of the plea in its totality," we conclude that the plea was knowing, intelligent, and voluntary (People v Tucker, 169 AD3d 1368, 1369 [4th Dept 2019], lv denied 33 NY3d 982 [2019] [internal quotation marks omitted]; see People v Walker, 151 AD3d 569, 569 [1st Dept 2017]).
We have considered the remaining contentions in defendant's pro se supplemental brief and conclude that none warrants modification or reversal of the judgment.
All concur except Lindley, J., who dissents and votes to reverse in accordance with the following memorandum: I agree with the majority that Supreme Court erred in refusing to suppress the statement that defendant made to the police while in custody at the crime scene but before he was advised of the Miranda warnings. Unlike the majority, however, I do not find the error to be "harmless beyond a reasonable doubt" (People v Crimmins, 36 NY2d 230, 237 [1975]). I would therefore reverse the judgment, vacate the plea, grant that part of the omnibus motion seeking to suppress defendant's statement, and remit the matter to Supreme Court for further proceedings on the indictment.
The Court of Appeals has repeatedly advised that harmless error analysis will "rarely, if ever," apply in cases involving guilty pleas "unless at the time of plea [the defendant] states or reveals his [or her] reason for pleading guilty" (People v Grant, 45 NY2d 366, 379-380 [1978]). [*3]"This is especially true when the defendant has unsuccessfully sought to suppress a confession" (id. at 380). Because defendants usually do not say why they are pleading guilty, "an appellate court is rarely in a position to determine whether denial of a suppression motion played any part in a defendant's decision to plead" (People v Lloyd, 66 NY2d 964, 965 [1985]). An erroneous suppression ruling may be deemed harmless, however, "if the defendant articulates a reason for [the plea] that is independent of the incorrect preplea court ruling . . . or an appellate court is satisfied that the decision to accept responsibility was not influenced by the error" (People v Wells, 21 NY3d 716, 719 [2013] [internal quotations marks omitted]).
Here, the People do not argue that harmless error analysis applies, and defendant failed to articulate a reason for his plea that is independent of the erroneous suppression ruling. The majority nevertheless concludes that there is no reasonable possibility that the court's erroneous suppression ruling contributed to defendant's decision to plead guilty. I see no basis in the record to reach that conclusion. Although the majority relies on our 3-2 decision in People v Clanton (151 AD3d 1576 [4th Dept 2017]), in which we found a preplea error to be harmless without identifying anything in the record indicating that defendant would have pleaded guilty regardless of the error, I do not find the reasoning of Clanton to be persuasive.
Again, as a general rule, "an appellate court is rarely in a position to determine whether denial of a suppression motion played any part in a defendant's decision to plead, making harmless error rules generally inapplicable in such situations" (Lloyd, 66 NY2d at 965), and this is not one of those rare cases in which the defendant said something on the record from which we can conclude that he would have pleaded guilty without regard to the error. I therefore respectfully dissent.
Entered: December 23, 2022
Ann Dillon Flynn
Clerk of the Court