People v Swank (2024 NY Slip Op 06449)

People v Swank

2024 NY Slip Op 06449

Decided on December 20, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 20, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., BANNISTER, OGDEN, NOWAK, AND DELCONTE, JJ.

744 KA 24-00123

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DANIEL M. SWANK, DEFENDANT-APPELLANT. 

KEEM APPEALS, PLLC, SYRACUSE (BRADLEY E. KEEM OF COUNSEL), FOR DEFENDANT-APPELLANT.
ANTHONY J. DIMARTINO, JR., DISTRICT ATTORNEY, OSWEGO (AMY L. HALLENBECK OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Oswego County Court (Armen J. Nazarian, J.), rendered October 5, 2023. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a controlled substance in the third degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, the plea is vacated, those parts of the omnibus motion seeking to suppress physical evidence related to counts 2 and 3 of the indictment are granted, those counts of the indictment are dismissed and the matter is remitted to Oswego County Court for further proceedings on count 1 of the indictment.
Memorandum: Defendant appeals from a judgment convicting him upon his guilty plea of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) in satisfaction of an indictment that also charged defendant with two counts of criminal possession of a weapon in the fourth degree (§ 265.01 [4]). On appeal, defendant contends, inter alia, that law enforcement officers unlawfully searched his residence without a warrant and that the emergency exception to the warrant requirement does not apply. We agree.
At approximately 2:00 on the morning in question, Cayuga County Sheriff's Deputies responded to a 911 call regarding a disturbance at a dwelling located in Cayuga County. Upon arrival at that address, the deputies were told that, while outside the dwelling, defendant pointed a short or sawed-off shotgun at two people and then discharged the gun in the air. Defendant and his wife thereafter entered the dwelling, where a third person was present. Defendant and his wife eventually left the dwelling, injuring no one. Based on information obtained from the three witnesses, which included the name of defendant, the officers obtained information about defendant's criminal history as well as his current address in Oswego County.
Cayuga County deputies and members of the New York State Police arrived at defendant's residence at approximately 6:00 a.m., and, upon seeing a vehicle registered to defendant parked in the driveway, they established a perimeter around the residence. Using a loudspeaker, they directed the occupants of the residence to exit. Approximately one hour later, defendant's wife exited the residence, whereupon she informed the police that defendant was armed and still inside the residence. Defendant's daughter exited the residence sometime after the wife.
During a later telephone conversation with the police, defendant denied being present at the residence, but his statements were belied by the fact that officers heard police sirens in the background of his telephone communication. The officers unsuccessfully attempted to fly a drone into the residence for visual access. Eventually, approximately four hours after the stand-off began, defendant exited the residence and surrendered without incident.
Following defendant's arrest, tactical officers conducted a "cursory" or protective sweep of the residence to, in the words of one officer, "confirm that there was nobody else there [who was] going to need potentially additional resources" and to "ensur[e] there were no more occupants or hazardous situations inside the residence." At a suppression hearing, the officers testified that such a sweep was their "normal" procedure where, as here, a person, who is known to be armed, has barricaded themselves inside a residence. The testifying officers admitted, however, that they did not have any reason to suspect that anyone else was in the residence. 
While sweeping the rooms inside the residence, the officers observed the barrels of two long guns in a bedroom. Inasmuch as defendant had a prior felony conviction, any possession of, inter alia, a shotgun or rifle was unlawful (see Penal Law § 265.01 [4]).
The police thereafter obtained a warrant to search the premises for all types of guns, including long guns, rifles and shotguns, as well as ammunition. During a search pursuant to that warrant, officers seized the two guns from the residence but also saw numerous baggies of cocaine. Knowing that the search warrant did not authorize the seizure of the cocaine, officers obtained a second warrant, permitting them to seize the cocaine from the residence.
Defendant was indicted on various offenses and, as part of his omnibus motion, sought suppression of all tangible items seized from his residence, contending that the initial cursory or protective sweep was an unconstitutional warrantless entry of his residence. In opposition, the People argued that the warrantless entry of the property was justified by either exigent or emergency circumstances. Following a hearing, County Court refused to suppress the evidence, concluding that exigent circumstances and emergency circumstances justified the warrantless entry of the residence. Defendant ultimately pleaded guilty to the reduced charge of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) in full satisfaction of the indictment.
We agree with defendant's contention that the warrantless entry of his residence was unconstitutional. It is well established that a warrantless entry into a residence is "presumptively unreasonable" (Payton v New York, 445 US 573, 586 [1980]). Nevertheless, such entries may be justified by emergency or exigent circumstances. In order to justify a warrantless entry under emergency circumstances, "(1) the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property and this belief must be grounded in empirical facts; (2) the search must not be primarily motivated by an intent to arrest and seize evidence; and (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched" (People v Doll, 21 NY3d 665, 670-671 [2013], rearg denied 22 NY3d 1053 [2014], cert denied 572 US 1022 [2014]; see People v Lee, 224 AD3d 1372, 1374 [4th Dept 2024], lv denied 41 NY3d 984 [2024]).
In order to justify a warrantless entry under exigent circumstances, "the following factors should be considered in determining whether exigent circumstances exist: (1) the gravity or violent nature of the offense; (2) whether there is reason to believe the suspect is armed; (3) whether there is a clear showing of probable cause; (4) whether there is strong reason to believe the subject is in the premises being entered; (5) the likelihood the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry" (People v Burr, 124 AD2d 5, 8 [4th Dept 1987], affd 70 NY2d 354 [1987], cert denied 485 US 989 [1988]; see People v Coles, 105 AD3d 1360, 1362 [4th Dept 2013]; see generally Payton, 445 US at 590).
In reviewing the constitutionality of a warrantless entry onto property, the facts "should be viewed from the perspective of the police in the circumstances with which they were confronted" (People v Clements, 37 NY2d 675, 680 [1975], cert denied 425 US 911 [1976]), and courts should consider whether the police would have been "derelict in the performance of their dut[ies] as enforcement officers had they done nothing" (id.).
Protective or cursory sweeps of property may fall under either the exigent circumstances or the emergency exception to the warrant requirement under certain conditions (see generally People v Harper, 100 AD3d 772, 773-774 [2d Dept 2012], lv denied 21 NY3d 943 [2013]; People v Osorio, 34 AD3d 1271, 1272 [4th Dept 2006], lv denied 8 NY3d 883 [2007]; People v Bost, 264 AD2d 425, 425 [2d Dept 1999]). Generally, there must be specific, articulable facts to [*2]support a reasonable belief that a person is present within the premises who could pose a danger to officers, destroy evidence or be in need of assistance (see People v Hadlock, 218 AD3d 925, 928-929 [3d Dept 2023], lv denied 40 NY3d 997 [2023]; People v Sears, 165 AD3d 1482, 1485 [3d Dept 2018], lv dismissed 32 NY3d 1129 [2018]; Harper, 100 AD3d at 773-774).
Here, we conclude that there were no emergency or exigent circumstances justifying the warrantless search of the residence. Once defendant's daughter exited the dwelling, the officers knew from defendant's wife that no one else was in the dwelling except defendant. None of the officers at the scene witnessed anything that would lead them to suspect that there was another person in the residence. The "mere possibility" that a person could be inside the premises did not justify the search (People v Carey, 81 Misc 3d 1221[A], 2023 NY Slip Op 51419[U], *8 [Sup Ct, Nassau County 2023]). We also note that there was no indication that defendant had shot or injured anyone prior to the officers' arrival at his residence, and at no time had defendant threatened the police or anyone else at the residence. Under the circumstances, there was no legitimate reason for the police not to apply for a search warrant before entering the house.
Based on our determination that the warrantless entry into the premises was unauthorized, we agree with defendant that the guns seized during the execution of the first search warrant must be suppressed because they are the primary evidence obtained as a direct result of the illegality, i.e. "evidence illegally obtained during or as the immediate consequence of the challenged police conduct" (People v Stith, 69 NY2d 313, 318 [1987]; cf. Hadlock, 218 AD3d at 929-930; see generally People v Turriago, 90 NY2d 77, 86-87 [1997], rearg denied 90 NY2d 936 [1997]). We therefore reverse the judgment, vacate the plea, grant those parts of the omnibus motion seeking to suppress the guns and dismiss counts 2 and 3 of the indictment, and we remit the matter to County Court for further proceedings on count 1 of the indictment.
We nevertheless reject defendant's contention that the cocaine seized during the execution of the second warrant must be suppressed. The inevitable discovery doctrine for secondary evidence is applicable where that evidence would have been discovered " 'pursuant to some standardized procedures or established routine' " (Turriago, 90 NY2d at 87; see People v Clanton, 151 AD3d 1576, 1578 [4th Dept 2017]), and that includes situations where, as here, there is "a 'very high degree of probability' that normal police procedures would have uncovered the challenged evidence 'independently of [the] tainted source' " (Turriago, 90 NY2d at 86), including during the subsequent execution of valid search warrants (see People v Brooks, 152 AD3d 1084, 1087 [3d Dept 2017]; People v Hardy, 5 AD3d 792, 793 [2d Dept 2004], lv denied 3 NY3d 641 [2004]). Here, the police could have obtained a valid search warrant for the residence, even without the initial warrantless sweep of the property, based on evidence that the victims informed the police that defendant possessed a gun during the initial incident and that defendant's wife, upon exiting the residence, informed the police that defendant was currently armed (see Hardy, 5 AD3d at 793; People v Alberti, 111 AD2d 860, 861 [2d Dept 1985], lv denied 66 NY2d 760 [1985]).
In light of our determination, we do not address defendant's remaining contention.
Entered: December 20, 2024
Ann Dillon Flynn
Clerk of the Court